CASE NO. 22-1478(L), XAP 22-1532 PUBLIC

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

––––––––––––––––

CHARLOTTE-MECKLENBURG
COUNTY BOARD OF EDUCATION,

*Plaintiff - Appellant,*

v.

ALEAH BRADY, Individually, and by and through parent or guardian,
Jason Brady; JASON BRADY, Individually,

*Defendants - Appellees.*

––––––––––––––––

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

––––––––––––––––

**OPENING BRIEF OF APPELLANT - PUBLIC (Redacted)**

––––––––––––––––

Christopher Z. Campbell
Kristopher L. Caudle
CAMPBELL SHATLEY, PLLC
674 Merrimon Avenue
Suite 210
Asheville, NC 28804
828-398-2775
chris@csedlaw.com
kris@csedlaw.com

*Counsel for Appellant*

## CORPORATE DISCLOSURE STATEMENT

The District Court erred in ruling that the withholding exception to North Carolina's one-year statute of limitations for IDEA claims applied in this case.

     A.     The Scope of Section 504 and the IDEA requirements.

     B.     North Carolina Utilizes a One-Year Statute of Limitations for IDEA Claims.

     C.     The District Court Erred in Finding that a February 2013 Email to A.B.'s Section 504 Team was a Request for an Evaluation by an IEP Team under IDEA.

          i.     The Scope of Child Find Obligations Under IDEA

          ii.     Parents must at least make a request for an evaluation under IDEA to invoke IDEA's narrow withholding exception.

     D.     Even if the February 2013 Email was a Request for an Evaluation, the District Court Still Erred in Finding that the Withholding of Any Information by CMS Prevented J.B. from Timely Filing for a Due Process Hearing under IDEA.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS............................................................................ ii

TABLE OF AUTHORITIES ..................................................................iv

JURISDICTIONAL STATEMENT ..........................................................1

ISSUES PRESENTED FOR REVIEW ....................................................1

STATEMENT OF THE CASE................................................................2

    a.    Factual Background.....................................................2

    b.    North Carolina Administrative Proceedings .............................7

    c.    Federal Court Proceedings ........................................8

SUMMARY OF ARGUMENT ...............................................................9

STANDARD OF REVIEW ..................................................................10

ARGUMENT .................................................................................13

    I.    The District Court erred in ruling that the withholding exception to North Carolina's one-year statute of limitations for IDEA claims applied in this case ........................................................13

        A. The Scope of Section 504 and the IDEA requirements ................13

        B. North Carolina Utilizes a One-Year Statute of Limitations for IDEA Claims ....................................................15

        C. The District Court Erred in Finding that a February 2013 Email to A.B.'s Section 504 Team was a Request for an Evaluation by an IEP Team under IDEA.......................................18

i.    The Scope of Child Find Obligations Under IDEA.............19

ii.   Parents must at least make a request for an evaluation under IDEA to invoke IDEA's narrow withholding exception..........................................................21

D. Even if the February 2013 Email was a Request for an Evaluation, the District Court Still Erred in Finding that the Withholding of Any Information by CMS Prevented J.B. from Timely Filing for a Due Process Hearing under IDEA ......................................................................................28

CONCLUSION ...............................................................................................34

CERTIFICATE OF COMPLIANCE .......................................................36

CERTIFICATE OF SERVICE ............................................................36

# TABLE OF AUTHORITIES

## Cases

*Ashley G. v. Copperas Cove Indep. Sch. Dist.*,
No. 6:19-CV-00420-ADA-JCM, 2021 U.S. Dist. LEXIS 87634
(W.D. Tex. May 7, 2021) .................................................................. 17, 24, 28

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*,
458 U.S. 176 (1982) .................................................................................. 12

*Burton v. Cleveland Heights Univ. Heights Bd. of Educ.*,
No. 18-3595, 2019 U.S. App. LEXIS 19499 (6th Cir. June 27, 2019) ............ 18

*Carlisle Area Sch. v. Scott P.*,
62 F.3d 520 (3d Cir. 1995) ........................................................................ 11

*County Sch. Bd. v. Z.P.*,
399 F.3d 298 (4th Cir. 2005) ...................................................................... 12

*D.G. v. Flour Bluff Indep. Sch. Dist.*,
481 Fed. App'x 887 (5th Cir. 2012) .............................................................. 19

*D.G. v. Somerset Hills Sch. Dist.*,
559 F. Supp. 2d 484 (D.N.J. 2008) ............................................................... 27

*D.K. v. Abington Sch. Dist.*,
696 F.3d 233 (3d Cir. 2012) .............................................................. *passim*

*D.S. ex rel. Z.S. v. Neptune Twp. Bd. of Educ.*,
264 F. App'x 186 (3d Cir. 2008) ............................................................ 18, 20

*Derrick v. Glen Mills Sch.*,
No. 19-1541, 2019 U.S. Dist. LEXIS 220610 (E.D. Pa. Dec. 19, 2019) .......... 19

*Doyle v. Arlington Cnty. Sch. Bd.*,
953 F.2d 100 (4th Cir. 1991) ...................................................................... 12

*Durbrow v. Cobb Cty. Sch. Dist.*,
887 F.3d 1182 (11th Cir. 2018) .................................................................... 21

*Durrell v. Lower Merion Sch. Dist.*,
No. 10-6070, 2011 U.S. Dist. LEXIS 70537 (E.D. Pa. June 30, 2011) ............ 19

*Edwards ex rel. Edwards v. Cleveland Heights-University Heights Board of
Education*,
   951 F.2d 349, 1991 WL 270811 (6th Cir. 1991) ....................................... 18-19

*El Paso Indep. Sch. Dist. v. Richard R.*,
   567 F. Supp. 2d 918 (W.D. Tex. 2008) ..................................................... *passim*

*Endrew F. v. Douglas Cty. Sch. Dist. RE-1*,
   137 S. Ct. 988 (2017) ............................................................................... 14-15

*Forest Grove Sch. Dist. v. T.A.*,
   557 U.S. 230 (2009) ...................................................................................... 19

*G v. Fort Bragg Dependent Schs.*,
   343 F.3d 295 (4th Cir. 2003) ..................................................................... 11-12

*G.L. v. Ligonier Valley Sch. Dist. Auth.*,
   802 F.3d 601 (3d Cir. 2015) ........................................................................... 23

*Hartmann ex rel. Hartmann v. Loudoun Cty. Bd. of Educ.*,
   118 F.3d 996 (4th Cir. 1997) ......................................................................... 12

*J.P. v. County Sch. Bd.*,
   516 F.3d 254 (4th Cir. 2008) ......................................................................... 12

*J.S. v. Scarsdale Union Free Sch. Dist.*,
   826 F. Supp. 2d 635 (S.D.N.Y. 2011) ................................................... 20, 26-27

*Johnson v. Charlotte-Mecklenburg Schools Board of Education*,
   20 F.4th 835 (4th Cir. 2021) ............................................................................. 8

*K.D. v. Starr*,
   55 F. Supp. 3d 782 (D. Md. 2014) ............................................................. 13, 14

*Long v. Hooks*,
   972 F.3d 442 (4th Cir. 2020) ......................................................................... 31

*M.B. v. Chester Cty. Intermediate Unit*,
   No. 19-2622-KSM, 2022 U.S. Dist. LEXIS 31085
   (E.D. Pa. Feb. 22, 2022) ...................................................................... 17, 29, 31

*Manning v. Fairfax Cnty. Sch. Bd.*,
   176 F.3d 235 (4th Cir. 1999) ......................................................................... 16

v

*Meridian Joint Sch. Dist. No. 2 v. D.A.*,
792 F.3d 1054 (9th Cir. 2015) ........................................................ 18

*MM v. Sch. Dist.*,
303 F.3d 523 (4th Cir. 2002) ............................................. 10, 11, 12

*Oliver v. Dall. Indep. Sch. Dist.*,
Civil Action No. 3:01-CV-2627-N, 2004 U.S. Dist. LEXIS 15814
(N.D. Tex. Aug. 11, 2004) .............................................................. 28

*R.R. v. Fairfax Cnty. Sch. Bd.*,
338 F.3d 325 (4th Cir. 2003) .......................................................... 16

*R.S. v. Bd. of Dirs. of Woods Charter Sch. Co.*,
No. 1:16-cv-119, 2019 U.S. Dist. LEXIS 33760
(M.D.N.C. Mar. 4, 2019) ..................................................... 15, 16, 29

*R.S. v. Morgan Cnty. Bd. of Educ.*,
No. 3:18-CV-80 (N.D.W. Va. June 18, 2019) ........................... 22, 23

*Solanco Sch. Dist. v. C.H.B.*,
No. 5:15-cv-02659, 2016 U.S. Dist. LEXIS 104559
(E.D. Pa. Aug. 9, 2016) ...................................... 13, 14, 17, 20

*Swope v. Central York Sch. Dist.*,
796 F. Supp. 2d 592 (M.D. Pa. 2011) ............................................. 30

*T.B. v. Bryan Indep. Sch. Dist.*,
628 F.3d 240 (5th Cir. 2010) ...................................................... 15, 18

*T.R. v. Sch. Dist. of Phila. L.R.*,
4 F.4th 179 (3d Cir. 2021) ........................................................ 19-20

*Tracy v. Beaufort Cnty. Bd. of Educ.*,
335 F. Supp. 2d 675 (D.S.C. 2004) ................................................ 20

*Wagner v. Bd. of Educ. of Montgomery Cty.*,
340 F. Supp. 2d 603 (D. Md. 2004) ............................................... 11

## Statutes

20 U.S.C. § 1400 .................................................................................. 2

20 U.S.C. § 1401 ................................................................. 14, 19, 21

20 U.S.C. § 1412 ................................................................... 19

20 U.S.C. § 1414 ......................................................... 14, 15, 21

20 U.S.C. § 1415 ........................................................... *passim*

28 U.S.C. § 1291 ..................................................................... 1

28 U.S.C. § 1331 ..................................................................... 1

N.C. Gen. Stat. § 115C-109.6 ................................... 2, 15, 16

## Other Authorities

34 C.F.R. § 104.3 ................................................................ 14

34 C.F.R. § 300.301 ........................................................... 19

34 C.F.R. § 300.504 .................................................. 17, 18, 32

*NC Policies* 1503-2.1 (amended March, 2021)
https://www.dpi.nc.gov/media/8754/open ............................ 21

## JURISDICTIONAL STATEMENT

This consolidated appeal is taken from Case No. 3:18-CV-463 commenced by Plaintiff-Appellant the Charlotte-Mecklenburg Board of Education ("CMS") against ███████ ("A.B."), individually, and by and through her parent or guardian Jason Brady ("J.B.") (hereinafter collectively, "Defendants" or "Appellee's").  This appeal follows the entry of a March 31, 2022 Order entered by the Honorable Robert J. Conrad Jr., District Court judge for the Western District of North Carolina, holding that the withholding exception to North Carolina's one-year statute of limitations for Individuals with Disabilities Education Improvement Act ("IDEA") claims applied, and that Defendants underlying IDEA claims were not time-barred.

The District Court below had federal subject-matter jurisdiction pursuant to 20 U.S.C. §§ 1415(i)(2)(A), 1415(i)(3)(A) and 28 U.S.C. § 1331 to review the State Hearing Review Officer's ("SHRO") Final Decision pertaining to the application of North Carolina's one-year statute of limitations for IDEA claims.  This Court has jurisdiction over this Appeal of a Final Order pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

(i)    Whether the District Court erred in ruling that the withholding exception to North Carolina's one-year statute of limitations for IDEA claims was applicable in this case.

(ii)    Whether the District Court erred in finding that a February 2013 email to A.B.'s Section 504 team was a request for an evaluation by an IEP team under IDEA.

(iii)   Even if the February 2013 email was a request for an evaluation
under IDEA, whether the District Court erred in finding that the
withholding of any information by CMS prevented J.B. from
timely filing for a due process hearing under IDEA.

## STATEMENT OF THE CASE

This case arises from an original action brought by CMS under IDEA 20
U.S.C. § 1400 *et seq.*, and parallel state law, Chapter 115C, Article 9 of the North
Carolina General Statutes, following a two-tier administrative proceeding conducted
under applicable North Carolina law.

a.    Factual Background

A.B. is ████████████████████████████████████████
████████████. JA p. 71. ████████████████████████████
as having ████████████████████████████████████████
█████, █████████████████████████████████████████
████████████████. JA p. 665, Finding of Fact ¶ 10. ██████████████
██████████████████████████████████████████████████████
████████████████████████████.
        ████████████████████████████████████████████
██████████████████████████████████████. JA pp. 144-148, 358-361, 367-
434. ████████████████████████████████████. JA pp. 381-391.
██████████████████████████████████████████████████████



2

███████████. JA p. 265. ████████████████████████████████

████████████████████████████. *Id.* ████████████:



JA p. 265.



. JA p. 265.

.  JA  pp.  384-386.

. JA p. 265.

JA pp. 265, 385-386.

. JA p. 265.

Ultimately,

JA pp. 381-386.

. JA pp. 378-

379, 386, 390-392, 405, 420-424. ███████████████████████████

███████████████████████████████. *Id.*

Following the September 2013 Section 504 meeting J.B. acknowledged receiving "a copy of the Parent-Student Rights and Procedural Safeguards" from CMS after the February 2013 meeting. JA pp. 61, 392; *see also* JA pp. 360-361, ¶¶ 7-10, 365-366, *see infra* Note 5. ████████████████████████

████████████████████████████████████████████

█████████████████████. JA pp. 70-85, 144-148.

███████████████████████████████████████████

██████████████████. JA pp. 360-361, ¶ 10, 362-366. ██████████████

████████████████████████████████████████. *Id.*

█████████████████████████████████████████████

████████████████████████████████████████████. JA pp.

361 ¶ 9, 362-364.  Specifically, ████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████. JA pp. 362-363. ██

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████. JA pp. 70-85, 144-148. ████████████████



██████████████████████████████████████████

██████████████████████████████████████████

████████████████████. JA pp. 70-85, 144-148.

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████ JA pp. 358-

361, 367-434. ████████████████████████████

██████████████████████████████████████████

██████████████████████████████ . JA pp. 358-

359 ¶ 8, 361 ¶ 11.

On ██████████████████████████████████

██████████████████████████████████████████

█████████████████. JA p. 674, Finding of Fact ¶ 61. ████████

██████████████████████████████████████████

██████████████████████. JA p. 82 ¶¶ 94-97. ██████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████. JA pp. 358-359.

b.    North Carolina Administrative Proceedings

More than two (2) years after A.B.'s unilateral withdrawal from CMS, J.B. filed a due process petition ("Petition") with the Office of Administrative Hearings ("OAH"), asserting various procedural and substantive violations of IDEA against CMS.  JA pp. 43, 70-85.  During the OAH proceedings, the parties filed cross-motions for summary judgment.  JA pp. 122-339, 340-449.  Following a summary judgment hearing, the Honorable Administrative Law Judge Selina Malherbe concluded that J.B. "knew or should have known" about the actions giving rise to their claims prior to January of 2017.  JA pp. 44, 623.  Therefore, all of Defendants' due process claims were barred by the one-year statute of limitations applicable to IDEA claims under North Carolina law.  JA pp. 44, 622-625.

J.B. appealed the ALJ's Decision to an SHRO appointed by the North Carolina Department of Public Instruction ("NCDPI").  JA pp. 44, 628-629.  Ultimately, the SHRO disagreed with the ALJ, and entered a Final Decision reversing and remanding the administrative case back to OAH for further proceedings.  JA pp. 44, 698.  This decision was in error.  The SHRO acknowledged a discrepancy between the parties on the "knew or reasonably should have known" date but declined to address it.  JA pp. 674 ¶ 64.  Neither the ALJ nor the SHRO's decision reached the merits of any of J.B.'s underlying IDEA claims.  JA pp. 44, 622-625, 661-700.

c.      Federal Court Proceedings

On August 22, 2018, CMS filed an original civil action in this Court as an aggrieved party to the SHRO's Final Decision, which was followed by Defendants' Answer.  JA pp. 7-21.  Subsequently, the parties submitted written briefs solely addressing the application of the withholding exception to IDEA's statute of limitations.  D.E. 8; D.E. 18-20.  With the consent of Defendants' counsel, on January 25, 2022, CMS sought leave to file an Amended Complaint to clarify the scope of relief sought in its Complaint following this Court's published opinion in *Johnson v. Charlotte-Mecklenburg Schools Board of Education*, 20 F. 4th 835 (4th Cir. 2021).  JA pp. 22-27.  Leave to file an Amended Complaint was granted on January 27, 2022.  JA pp. 28-29.  Defendants answered the Amended Complaint on February 10, 2022, raising a Counterclaim.  JA pp. 701-736.

On March 31, 2022, the District Court entered an Order holding that the withholding exception to North Carolina's one-year statute of limitations for IDEA claims applied, and that J.B.'s underlying IDEA claims were not time-barred. JA p. 55.  The District Court's application of the statute of limitations was in error.  On April 28, 2022, CMS timely filed this appeal challenging the District Court's holding on the application of the withholding exception to the statute of limitations. JA pp. 65-66.  Thereafter, Defendants filed a Cross-Appeal on May 9, 2022, challenging the District Court's dismissal of its Counterclaim without prejudice.  JA pp. 67-69.

On May 11, 2022, this Court entered an Order consolidating both actions into one appeal for briefing.

## SUMMARY OF ARGUMENT

This is a case of first impression in the Fourth Circuit. This case lies at the intersection of two separate federal disability statutes – Section 504 of the Rehabilitation Act and the IDEA – and spans the bookends of federal disability law. On one end is the scope of IDEA's "Child Find" obligation. On the other end, is the narrow application of the "withholding" exception to IDEA's statute of limitations. Resolution of conflicts embedded within these legal principles are essential for public school districts to comply "voluntarily and knowingly" with Spending Clause legislation, for parents to understand the scope of due process rights, and for future courts to adjudicate stale claims.

The District Court errored in ruling that the "withholding" exception to North Carolina's one-year statute of limitations for IDEA claims applied in this case. Exceptions to IDEA's statute of limitations are construed narrowly, not broadly. For IDEA's "withholding" exception to apply at all, CMS must have withheld information required to be provided under IDEA or state law. The District Court erred in finding that an email from J.B to A.B.'s Section 504 team was a request for an initial evaluation under IDEA. Therefore, no information required under state or federal law was withheld and no IDEA obligations were ever triggered.

Even if certain procedural notices were required to be given to J.B. under IDEA, the District Court still misapplied the statute of limitations and failed to articulate how CMS "prevented" J.B. from timely filing a due process petition under North Carolina law. To the contrary, the District Court concluded, and the greater weight of evidence supported, that CMS *did* timely provide J.B. with "proper notification of administrative rights under the IDEA.". JA p. 61. CMS did not prevent J.B. from exercising due process rights under IDEA. J.B. failed to act on awareness of his rights for more than four (4) years.

Accordingly, the withholding exception to North Carolina's one-year statute of limitations for IDEA claims does not apply. This Court should reverse the judgment of the District Court below and enter an Order holding that J.B.'s IDEA claims are time-barred as a matter of law.

## STANDARD OF REVIEW

This Court's standard of review on appeal is essentially the same as the District Court below. *See MM v. Sch. Dist.,* 303 F.3d 523, 530 (4th Cir. 2002). Under the IDEA, any party "aggrieved" by a decision reached at a due process hearing of the state educational agency may bring a civil action in a district court of the United States. 20 U.S.C. § 1415(i)(2). A district court reviewing a decision of the educational agency: "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its

decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S. C. § 1415(i)(2)(C).

For IDEA claims, a federal district court conducts a "modified de novo review," based on the administrative record "giving 'due weight' to the underlying administrative proceedings." *Id.; Wagner v. Bd. of Educ. of Montgomery Cty*., 340 F. Supp. 2d 603, 611 (D. Md. 2004). "Whether a district court has accorded the proper 'due weight' to the administrative proceedings is a question of law -- or at least a mixed question of law and fact -- to be reviewed *de novo* by an appellate court." *MM*, 303 F.3d at 531. Therefore, this Court "need not defer to factual recitations made by a district court from the administrative record, because that court stands in no better position than [an appellate court] in reviewing the record." *Id. See Carlisle Area Sch. v. Scott*, 62 F.3d 520, 528-529, 532 (3rd Cir. 1995) (findings of the SHRO can be overturned if they are unsupported by an independent review of the record evidence considered in its entirety). Ultimately, like the District Court below, this Court "must examine the entire record, and…afford 'due weight' to the administrative determinations, applying the standard of review utilized by the district court." *MM*, 303 F.3d at 531.

In reaching a decision, "findings of fact made in administrative proceedings are considered prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why." *G. v. Fort Bragg Dependent Schs*., 343 F.3d 295, 302

11

(4th Cir. 2003) (citing *M.M.,* 303 F.3d at 531; *see also Doyle v. Arlington Cnty. Sch. Bd.,* 953 F.2d 100, 105 (4th Cir. 1991)); *County Sch. Bd. v. Z.P.*, 399 F.3d 298, 305 (4th Cir. 2005) ("[F]actual findings made during the state administrative proceeding are entitled to a presumption of correctness, so long as the findings were 'regularly made.'"). In determining whether a hearing officer's findings were "regularly made," cases in the 4th circuit "typically focus[] on the process through which the findings were made." *J. P. v. County. Sch. Bd*., 516 F.3d 254, 259 (4th Cir. 2008); *see Doyle*, 953 F.2d at 105 ("[I]n deciding what is the due weight to be given an administrative decision under *Rowley*, we think a reviewing court should examine the way in which the state administrative authorities have arrived at their administrative decision and the methods employed.").

"After giving the administrative fact-findings…due weight, if any," this Court "is free to decide the case on the preponderance of the evidence, as required by the statute." *Doyle*, 953 F.2d at 105. However, a federal court "should be reluctant indeed to second-guess the judgment of education professionals," *MM*, 303 F.3d at 532, and should not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Hartmann ex rel. Hartmann v. Loudoun Cty. Bd. of Educ*., 118 F.3d 996, 1000 (4th Cir. 1997) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)).

## ARGUMENT

I.    The District Court erred in ruling that the withholding exception to North Carolina's one-year statute of limitations for IDEA claims applied in this case.

    A.    The Scope of Section 504 and the IDEA requirements.

"Congress has enacted two statutes that focus, in some measure, on ensuring that students with disabilities have access to a free public education equal to that of non-disabled students…", Section 504 of the Rehabilitation Act and IDEA. *See K.D. v. Starr*, 55 F. Supp. 3d 782, 783-84 (D. Md. 2014). Both federal statutes operate to provide accommodations and services for students with disabilities. *See Solanco Sch. Dist. v. C.H.B.,* No. 5:15-cv-02659, 2016 U.S. Dist. LEXIS 104559, at *7 (E.D. Pa. Aug. 9, 2016). Despite their similarities, students receiving accommodations under Section 504 have no absolute right to services under IDEA. *Id.* at 7-10 (explaining the differences between Section 504 and IDEA, noting that Section 504 broadly "forbids discrimination on the basis of a disability in any context" and offers protections to "a broader swath of the population," than IDEA).

Section 504 is an anti-discrimination law of general applicability that "prohibits federally funded programs from discriminating against an otherwise qualified individual solely on the basis of her disability." *Starr,* 55 F. Supp. 3d at 784. Under Section 504, any student who: (i) has a mental or physical impairment that substantially limits one or more major life activities; (ii) has a

record of such an impairment; or (iii) is regarded as having such an impairment" may qualify for accommodations and services. 34 C.F.R. §104.3(j)(1); *see also Id*. at 784-785. Schools may comply with the requirements of Section 504, as CMS did in this case, through the implementation of a Section 504 accommodation plan. *Starr*, 55 F. Supp. 2d at 784; *see also* JA pp. 367-434.

Eligibility under Section 504 differs from eligibility for special education under IDEA. IDEA protections only extend to the parents of a "child with a disability." *See* e.g., *Solanco Sch. Dist. v. C.H.B.,* No. 5:15-cv-02659, 2016 U.S. Dist. LEXIS 104559, at *19 (E.D. Pa. Aug. 9, 2016) (holding that because the student "was not shown to be a 'child with a disability' under IDEA, the District did not have any disclosure obligations to the Parent under the IDEA."); *see also infra* Note 2 (noting limited carve-outs for the parents of some unidentified students in disciplinary proceedings conducted under IDEA). Under IDEA, "child with a disability" is a defined term that means a multidisciplinary team, including the student's parent, has determined through the IEP process that: (1) the student has a disability defined under IDEA; and (2) due to the disability, the student "needs special education and related services." 20 U.S.C. §§ 1401(3)(A); 1414(b)(4).

If an IEP team determines that a student is eligible for special education services under IDEA, *then* the student is entitled to a Free and Appropriate Public Education ("FAPE"). *See Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct.

988, 993-996 (2017).  FAPE is then provided to the eligible student through the development and implementation of an Individualized Education Plan ("IEP").  20 U.S.C. §1414(d); *see also R.S. v. Bd. of Dirs. of Woods Charter Sch. Co.,* No. 1:16-cv-119, 2019 U.S. Dist. LEXIS 33760, at *3 (M.D.N.C. Mar. 4, 2019).  Thus, "the goal of the IDEA – to ensure that disabled children receive a free appropriate public education – is furthered once the child is actually found to be a person the IDEA is designed to protect."  *T.B. v. Bryan Indep. Sch. Dist.,* 628 F.3d 240, 246 (5th Cir. 2010).

      B.    North Carolina Utilizes a One-Year Statute of Limitations for IDEA Claims.

The District Court misapplied IDEA's statute of limitations to the facts of this case.  The IDEA provides that a parent may file a due process complaint "not more than two years before the date the parent or public agency *knew or should have known* about the alleged action that forms the basis of the due process complaint, or, if the State has an explicit time limitation for filing a due process complaint…in the time allowed by that State law…."  20 U.S.C. § 1415(b)(6) (emphasis added).  Like other states, North Carolina has exercised its discretion under IDEA and established its own statute of limitations for special education cases.  N.C. Gen. Stat. § 115C-109.6(b).  Under North Carolina law, a petition for a due process hearing must "set forth an alleged violation that occurred not more than one-year before the party *knew or reasonably should have known* about the alleged action that forms the basis of the

15

petition." N.C. Gen. Stat. § 115C-109.6(b) (emphasis added); *see also Manning v. Fairfax Cnty. Sch. Bd.*, 176 F.3d 235 (4th Cir. 1999).

North Carolina's one-year statute of limitations does not apply to a parent "if the parent was *prevented* from requesting the hearing due to (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the petition, or (ii) the local educational agency's withholding of information from the parent that was required under State or federal law to be provided to the parent." N.C. Gen. Stat. § 115C-109.6(b) (emphasis added). Both exceptions to IDEA's statute of limitations are construed narrowly. *See R.S. v. Bd. of Dirs. of Woods Charter Sch. Co.,* No. 1:16-cv-119, 2019 U.S. Dist. LEXIS 33760, at *23 (M.D.N.C. Mar. 4, 2019); *El Paso Indep. Sch. Dist. v. Richard R*., 567 F. Supp. 2d 918, 942 (W.D. Tex. 2008).[1]

In this case, the only exception to the statute of limitations at issue is the District Court's misapplication of the "withholding" exception. There is no binding Fourth Circuit precedent addressing the scope of the "withholding" exception under IDEA. Courts outside of the Fourth Circuit have held that IDEA's withholding

---

[1] ███████████████████████████████████████████████ JA p. 733 ¶ 125; JA pp. 70-85, 622-625, 661-669. Therefore, the ALJ, SHRO and the District Court below only addressed the application of the "withholdings" exception. JA pp. 55, 622-625, 661-669, 675 ¶66.

exception only applies to "statutorily mandated disclosures" required under IDEA. *See e.g., D. K. v. Abington Sch. Dist.,* 696 F.3d 233, 254 (3d Cir. 2012); *Ashley G. v. Copperas Cove Indep. Sch. Dist.,* No. 6:19-CV-00420-ADA-JCM, 2021 U.S. Dist. LEXIS 87634, at *17 (W.D. Tex. May 7, 2021); *M.B. v. Chester Cty. Intermediate Unit*, No. 19-2622-KSM, 2022 U.S. 31085, at *49 (E.D. Pa. Feb. 22, 2022); *Richard R*., 567 F. Supp. 2d 918, 942 (W.D. Tex. 2008).

Courts outside the Fourth Circuit note that "statutorily mandated disclosures" may refer to two pieces of information under IDEA: (1) a "procedural safeguards" notice; and (2) a "Prior Written Notice" form, both of which are provided to the parent of a "child with a disability" when a school district "refuses" to initiate an "evaluation" under IDEA.  *See id.*; 20 U.S.C, §§ 1415(d)(1)(A); 20 U.S.C § 1415(b)(3); 34 C.F.R. 300.504(a); JA pp. 51-52.  A school district has no disclosure requirements to a parent unless the child is a "child with a disability" under IDEA. *See Solanco Sch. Dist. v. C.H.B.,* No. 5:15-cv-02659, 2016 U.S. Dist. LEXIS 104559, at *19 (E.D. Pa. Aug. 9, 2016) (holding that because the student "was not shown to be a 'child with a disability' under IDEA, the District did not have any disclosure obligations to the Parent under the IDEA."); *see infra* Note 2.

C.    The District Court Erred in Finding that a February 2013 Email to A.B.'s Section 504 Team was a Request for an Evaluation by an IEP Team under IDEA.

The District Court misapplied the statute of limitations and erred in adopting the findings of the SHRO over the ALJ. During the administrative proceeding, the ALJ correctly decided that the "withholding" exception was inapplicable in this case. JA pp. 622-625. On appeal, the SHRO reversed the ALJ's Decision, concluding that CMS was required under IDEA to provide procedural safeguards to J.B. JA p. 698. However, the District Court followed the SHRO's conclusion but only addressed one point in time: J.B.'s February 2013 email to A.B.'s Section 504 team. JA pp. 53-55; *see also* D.E. 18., pp. 20-23. Because J.B.'s email to A.B.'s Section 504 team was not a request for an evaluation under IDEA, no obligations under IDEA were ever triggered. [2]

---

[2] The plain language of IDEA provisions governing Prior Written Notice and Procedural Safeguards Notice only apply to *the parent of a "child with a disability."* 20 U.S.C § 1415(b)(3); 34 CFR 300.504(a) (emphasis added). Several Circuit Courts have addressed the limited scope of relief available under IDEA for parents of students who do not meet the definition of a "child with a disability." *See T.B. v. Bryan Indep. Sch. Dist.*, 628 F.3d 240, 242 (5th Cir. 2010) (holding that because the parent was not the parent of a "child with a disability" under IDEA, the parent was not entitled to any reimbursement for reasonable attorneys' fees under IDEA); *Meridian Joint Sch. Dist. No. 2 v. D. A.*, 792 F.3d 1054, 1056 (9th Cir. 2015) (same); *Burton v. Cleveland Heights Univ. Heights Bd. of Educ.*, No. 18-3595, 2019 U.S. App. LEXIS 19499, at *6 (6th Cir. June 27, 2019) (parents not entitled to attorneys' fees when they "did not prove that they were 'parent[s] of a child with a disability'"). *See also D.S., S.S. ex rel. Z.S. v. Neptune Township Board of Education*, 264 F. App'x 186 (3d Cir. 2008) (holding that only parents of a "child with a disability" can seek attorneys' fees under IDEA) (unpublished); *Edwards ex rel. Edwards v. Cleveland*

i.    The Scope of Child Find Obligations Under IDEA

"Either a parent of a child or a public agency may initiate a request for an initial evaluation to determine if the child is a child with a disability." 34 C.F.R. §300.301(b). States must ensure that local education agencies have in effect policies and procedures to ensure that all "children with disabilities" who are "in need of special education and related services" are identified, located, and evaluated." 20 U.S.C. §§ 1412(a)(3)(A), 1401(3)(A). This process is known as "Child Find." *Id.* However, "IDEA does not penalize school districts for not timely evaluating students who do not need special education." *D.G. v. Four Bluff Ind. Sch. Dist.*, 481 Fed. Appx. 887 (5th Cir. 2012) (unpublished) (citing *Forest Grove Sch. Dist. v. T. A.* 557 U.S. 230, 245 (2009) (emphasis in original). This is because "[o]nly a 'child with a disability' may seek relief under the IDEA." *Derrick v. Glen Mills Sch.,* No. 19–1541, 2019 U.S. Dist. LEXIS 220610, at *49 n.17 (E.D. Pa. Dec. 19, 2019); *Durrell v. Lower Merion Sch. Dist.*, No. 10-6070, 2011 U.S. Dist. LEXIS 70537, at *6 (E.D. Pa. June 30, 2011); *see also T.R. v. Sch. Dist. of Phila. L.R.*, 4 F.4th 179, 184 (U.S. 3d Cir. 2021) ("the IDEA provides relief only for the denial of a FAPE,

---

*Heights-University Heights Board of Education*, 951 F.2d 349, 1991 WL 270811, at *5 (6th Cir. 1991) (same) (unpublished table decision). The leading case on this issue is the Fifth Circuit's decision in *T.B.*, which was reached after the Texas district court decision in *Richard R*. The *Richard R.* Court did not recognize or analyze the plain language of IDEA as the Fifth Circuit did in *T.B*. *See Richard R.,* 567 F. Supp. 2d 918, 945 (W.D. Tex. 2008).

not for the denial of a procedural right.").  "[T]here is no evidence that Congress intended IDEA to protect the rights of 'children with a disability' who have not been determined eligible for special education services and children merely suspected of having a disability." *Solanco,* 2016 U.S. Dist. LEXIS 104559, at *19 (citing *D.S. v. Neptune Twp. Bd. of Educ.*, 264 Fed. Appx. 186, 189-190, (3d Cir. 2008) (unpublished)).

The mere diagnosis of a medical condition does not automatically trigger requirements under IDEA.  Rather, there must be a "critical causal connection" between the medical condition and the educational difficulties.  *See Tracy v. Beaufort Cnty. Bd of Ed.*, 335 F. Supp. 2d 675, 689 (D.S.C. 2004) (granting summary judgment for defendant when the school system did not conduct its own evaluation under IDEA). Furthermore, student absences and academic deficiencies alone are not sufficient to trigger an IDEA evaluation because IDEA does not require school districts to evaluate "every struggling student."  *See e.g., D.K. v. Abington Sch. Dist.,* 696 F.3d 233, 249 (3rd Cir. 2012) ("Child Find does not demand that schools conduct a formal evaluation of every struggling student."); *see also J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 663 (S.D.N.Y. 2011) ("The IDEA's child find provisions do not require district courts to evaluate as potentially 'disabled' any child who is having academic difficulties.").  Therefore, "[w]hen a school district uses measures besides special education [such as a Section 504 plan]

to assist struggling students, it is even less likely in breach of its child-find duty."

*Durbrow v. Cobb Cty. Sch. Dist.,* 887 F.3d 1182, 1196 (11th Cir. 2018).

> ii.    Parents must at least make a request for an evaluation under IDEA to invoke IDEA's narrow withholding exception.

Neither IDEA, its implementing regulations, or North Carolina state law address the scope of parent requests for special education evaluation under IDEA. The North Carolina *Policies for Governing Services for Children with Disabilities* ("NC Policies") do.  *See NC Policies* 1503-2.1 pp. 60-61 (amended March, 2021) *available at* https://www.dpi.nc.gov/media/8754/open (emphasis added).  The *NC Policies* place an affirmative duty on a parent to make an initial referral for evaluation when *the parent* suspects their child is a "child with a disability" under IDEA.  The *NC Policies* state:

> When a…parent suspects that a child may be a child with a disability, he/she shall provide in writing the reason for referral, addressing the specific presenting concerns and the child's current strengths and needs.
>
> This referral shall be given to the principal of the school, the child's teacher or other school professional, or the Superintendent or other appointed official of the LEA….

*Id.*  (emphasis added); *see also* 20 U.S.C. §§ 1401(3)(A); 1414(b)(4) (defining a "child with a disability," under IDEA with two elements: (1) the student has a disability defined under IDEA; and (2) due to the disability, the student "needs special education and related services.").

21

In this case, the District Court erred by misapplying precedent from three cases all involving explicit parent requests for evaluation under IDEA. Each case is distinguishable from this case. In *El Paso Indep. Sch. Dist. v. Richard R.,* 567 F. Supp. 2d 918, 942 (W.D. Tex. 2008), a district court in the Fifth Circuit found that a school district's failure to provide a parent with procedural safeguards and a prior written notice for its refusal to evaluate the student for eligibility under IDEA was information required by Texas and federal law sufficient to meet the "withholding exception." *Richard R.,* 567 F. Supp. 2d at 945. However, in *Richard R.*, the parent clearly and unmistakably requested that the El Paso school district evaluate their child to determine eligibility under the IDEA. *Id.* at 945-946. The parent's request for an evaluation under IDEA was memorialized by the school district as follows:

> "Parent has requested possible Sp. Ed. testing. Please keep copies of student work, etc. you may think is important to show (90 days)."

*Id.* at 946. Following the parent's explicit request for an IDEA evaluation, the school district refused to evaluate Richard R. for eligibility under IDEA. *Id.* at 952. Unlike *Richard R.*, the District Court did not find that CMS "refused" to conduct an IDEA evaluation for A.B. following receipt of J.B.'s February 2013 email. JA pp. 51-55.

The District Court also misconstrued the parent request in *R.S. v. Morgan Cnty. Bd. of Educ.*, No. 3:18-CV-80, at *12 (N.D.W. Va. June 18, 2019). In *R.S.*, a student was diagnosed with Attention Deficit Disorder ("ADHD") and Oppositional /Defiant and Disruptive Behaviors ("ODD"). *R.S.*, No. 3:18-CV-80, at *2-3. Unlike

this case, the parents in *R.S.* unequivocally "requested [that R.S.] be tested for special education eligibility" on at least two occasions. *Id.* at 2-4, 13-14 ("it is undisputed that the parents suspected and asked for an IEP"). Following the parent's request for an IDEA evaluation, the school district convened an IEP team meeting and made an eligibility decision under IDEA. *Id*. at 2-5. The IEP team determined that the child was ineligible under IDEA, the parent then requested an Independent Educational Evaluation ("IEE") under IDEA, and the substance of the case turned on the scope of the school district's eligibility analysis under IDEA. *See Id.* at 2-5, 13-14.

Like *Richard R.* and *R.S.*, in *G.L. v. Ligonier Valley Sch. Dist. Auth.,* 802 F.3d 601, 625 (3d Cir. 2015), the parent also made an explicit request for a special education evaluation under IDEA. In *G.L.*, the student's teacher informed the parent that her child "seemed distracted in class and lacked organizational skills." *Id.* at 605. Thereafter, the child's father "orally requested that the District evaluate G.L. for any special education needs," and later made several written referrals to the child's principal requesting that "G.L. be evaluated for special education needs." *Id*. Following the request for an IDEA evaluation, the school district convened an IEP team meeting, found the student eligible under IDEA, and the substance of the parent's due process complaint turned on the adequacy of the child's existing IEP, not the manner of the parent's request for evaluation. *See Id*. at 606.

This case is much closer to the facts of *Ashley G. v. Copperas Cove Indep. Sch. Dist.,* a recent Texas district court decision from the Fifth Circuit. *See* No. 6:19-CV-00420-ADA-JCM, 2021 U.S. Dist. LEXIS 87634, at \*18 (W.D. Tex. May 7, 2021). *Ashley G.* and *Richard R.* are both Texas district court cases from the Fifth Circuit. *Ashley G.* is more recent and clarifies the scope of the holding in *Richard R.* In *Ashley G.,* a parent provided the school district with a letter notifying the district of their child's disability and requested an evaluation for Section 504 services. *Ashley G,* 2021 U.S. Dist. LEXIS 87624, at \*3. Thereafter, the school district found the child eligible under Section 504 and continued to implement a Section 504 plan for the child's disability. *Id.* at \*3-5. The parent later filed for due process under IDEA. *Id.* at \*16-17. The parent alleged that the school district violated Child-Find and argued that IDEA's statute of limitations should be tolled under the withholding exception pursuant to *Richard R. Id.* at \*16-17.

The Texas district court held that the withholding exception *did not* apply, because mere "[e]xpressions of concern about academic performance and requests for school assistance alone do not trigger the IDEA's child find duty." *Id.* at \*18. The Court concluded that the parent's letter could not even be considered "an implied request for an IDEA evaluation." *See Id.* at \*19. Therefore, because the parent's letter made *no* request for an IDEA evaluation, the withholding exception to IDEA's statute of limitations *did not* apply. *Id.*

24

In this case, like *Ashley G*., J.B.'s February 2013 email was not a request for

an evaluation under IDEA.   Unlike *Richard R.*, *R.S.* and *G.L.*, nowhere ████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████.

JA p. 265.  ██████████████████████████████████████████████████████████

████████████████████████████. *Id.* ██████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████.   JA  pp.  384-386.  ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.   JA p. 265.

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████. *Id.* ██████████████████████████████████

████████████████████████████████████████████████████████████████████   JA

pp.  265,  385-386.  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████. JA p. 265.

Ultimately, ███████████████████████████████████████

██████████████████████████████████████████████████

█████   JA pp. 381-386.  Thereafter, ██████████████████████████

████████████████████████████████████████████████.  JA

pp. 378-379, 386, 390-392, 405, 420-424.  During this time-period, ████████

██████████████████████████████████.  *Id.* ███████

██████████████████████████████████████████████.

JA pp. 144-148, 358-361, 367-434.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

JA pp. 358-361, 367-434.

To the contrary, ████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████.  JA pp. 358-359 ¶ 8, 361

¶ 11.  As courts have recognized, student absences and academic deficiencies alone

are not sufficient to trigger an IDEA evaluation because IDEA does not require

school districts to evaluate "every struggling student."  *See e.g., D.K.,* 696 F.3d at

249 ("Child Find does not demand that schools conduct a formal evaluation of every

struggling student."); *J.S.*, 826 F. Supp. 2d at 663 ("The IDEA's child find provisions

do not require district courts to evaluate as potentially 'disabled' any child who is having academic difficulties.").

In sum, J.B.'s February 2013 email was not a request for a special education evaluation under IDEA. Each of the cases relied upon by the District Court demonstrate clear, unmistakable, and explicit examples of parent requests for evaluation under IDEA. This case does not. Ultimately, if a school district does not suspect that a child *needs special education* available under IDEA, to assert the withholding exception, a parent must at least make a request for an evaluation under IDEA and the *NC Policies* known, especially if their child's disability has already been identified by school officials, and the school district is already accommodating the child's disability through the Section 504 process, with an existing Section 504 plan. *See* JA pp. 367-449.

While no "magic words"[3] are required to request an evaluation, a request must still be made. Implied requests, "[e]xpressions of concern about academic

---

[3] The only precedent provided by Appellees or the District Court to support such a sweeping, generic conclusion of law, were administrative cases from New Mexico and Pennsylvania, both of which are non-binding on this Court and inapplicable to the facts of this case in the Fourth Circuit. D.E. 19 pp. 16-17; JA p. 53. The bulk of the case law relied upon by the District Court only supports application of the withholding exception for parent requests under IDEA when they are explicit and repeated. *See Appellant Br. supra*; *see also e.g., D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 490 (D.N.J. 2008) (applying the "withholding exception" where the record demonstrated that the parent "repeatedly asked" for an evaluation of their child under IDEA and "no meeting was ever scheduled to discuss [the] requests and

performance and requests for school assistance alone" are insufficient to toll IDEA's statute of limitations under the "withholding" exception. *See Ashley G.,* 2021 U.S. Dist. LEXIS 87634, at *18; *see also Oliver v. Dall. Indep. Sch. Dist.,* Civil Action No. 3:01-CV-2627-N, 2004 U.S. Dist. LEXIS 15814, at *10 (N.D. Tex. Aug. 11, 2004) ("expressions of concern do not constitute a request for referral for evaluation under IDEA."). Accordingly, because the February 2013 email was not a request for an IDEA evaluation, no IDEA requirements applied. Thus, the District Court erred in finding that CMS withheld information required to be provided to J.B. under IDEA.

> D. Even if the February 2013 Email was a Request for an Evaluation, the District Court Still Erred in Finding that the Withholding of Any Information by CMS Prevented J.B. from Timely Filing for a Due Process Hearing under IDEA.

*Assuming arguendo* that there was a requirement under IDEA to provide J.B. with procedural notices under IDEA after the February 2013 email, the District Court still erred in holding that CMS *prevented* J.B. from timely asserting due process rights under IDEA. In its Order, the District Court ruled that "because CMS failed to provide A.B.'s parents with a copy of the procedural safeguards or a PWN following receipt of the February 2013 email, the withholding exception applie[d]

---

[the parent] was never given any written response indicating "why the evaluation requests had been denied.").

and prevent[ed] A.B.'s claims from being time-barred." JA p. 55. Then, in a separate part of the Order, the District Court addressed exceptions to IDEA's exhaustion requirement, and reached the opposite conclusion, holding that information provided by CMS to J.B. *did* provide a "proper notification of administrative rights under the IDEA." JA p. 61. The District Court provided no rationale for why information given to J.B. by CMS was sufficient for the exhaustion analysis but irrelevant to the "prevent[ion]" analysis under the statute of limitations. *See* JA pp. 54-55, 60-61.

The District Court erred in two respects. First, the District Court misapplied IDEA's statute of limitations rule. JA p. 55. Mere evidence of a withholding of information required to be provided under IDEA is insufficient to invoke the withholding exception. To toll IDEA's statute of limitations, a parent must also show that the withholding "prevented" or "caused their failure to timely file their due process complaint." *D. K. v. Abington Sch. Dist.*, 696 F.3d 233, 246-47 (3d Cir. 2012) (holding that the terms "'prevented from' and 'due to' denote a causation requirement."); *M.B. v. Chester Cty. Intermediate Unit, No. 19-2622-KSM*, 2022 U.S. Dist. LEXIS 31085, at *49 (E.D. Pa. Feb. 22, 2022).

The withholding exception is not a bright-line rule. Exceptions to IDEA's statute of limitations are construed narrowly. *See R.S.*, 2019 U.S. Dist. LEXIS 33760, at *23; *Richard R.*, 567 F. Supp. 2d at 942. Therefore, when the evidence shows that "parents were already fully aware of their procedural options, they cannot

excuse a late filing by pointing to the school's failure to formally notify them of those safeguards." *D.K.*, 696 F. 3d 233; *Richard R.*, 567 F. Supp. 2d 918 at 945 ("When a local educational agency delivers a copy of IDEA procedural safeguards to parents, the statutes of limitations for IDEA violations commence without disturbance. Regardless of whether parents later examine the text of these safeguards to acquire actual knowledge, that simple act suffices to impute upon them constructive knowledge of their various rights under the IDEA."); *see also Swope v. Central York Sch. Dist.*, 796 F. Supp. 2d 592 (M.D. Pa. 2012) (holding that because school district provided parent with procedural safeguards and parent declined to file for due process, parent had a basis to know of the actions forming the complaint and student could not seek relief for an alleged IDEA violation that occurred beyond the applicable statute of limitations). Furthermore, even if IDEA procedural notices are not fully provided, where the evidence shows that "some other source of IDEA information" was made available to a parent by the school district, the withholding exception does not apply. *See Richard R.,* 567 F. Supp. 2d at 945.

In this case, the District Court concluded that because CMS withheld information required under IDEA, A.B.'s IDEA claims were "prevented…from being time-barred." JA p. 55. Absent from the District Court's Order is any legal analysis explaining how any withholding of information by CMS *actually* "prevented" or "caused" J.B. to file an untimely due process petition. JA pp. 43-63.

Parent "prevent[ion]" is a required element of IDEA's statute of limitations and the District Court erred in misapplying the law.  *See D.K.,* 696 F.3d at 246-47 (3d Cir. 2012); *M.B.,* 2022 U.S. Dist. LEXIS 31085, at *49.

Second, the District Court's own Order, and the greater weight of evidence in the administrative record, undercut the conclusion that J.B. was in fact "prevented" from timely filing a due process petition by CMS.  In this case, ████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████.  JA pp. 70-85, 144-148.[4]  Rather, the District Court found that J.B. acknowledged receiving "a copy of the Parent-Student Rights and Procedural Safeguards" from CMS.[5]  JA pp. 61, 392; *see also* JA pp. 360-361, ¶¶ 7-10, 365-366.  J.B.'s acknowledgment occurred soon *after* the February 2013 meeting alleged to have triggered IDEA notice requirements by the District Court.  *Id.*  ████████████████████

---

[4] ████████████████████████████████  JA p. 569; D.E. 16-1 p. 26.  However, it is axiomatic that arguments of counsel are not evidence. *See Long v. Hooks*, 972 F.3d 442, 463 (4th Cir. 2020) ("it is elemental that counsel's arguments are not evidence in a case. It is literally black letter law.").
[5] On multiple separate occasions, ████████████████████████████ ████████████████████████████████ █████  JA pp. 378-379, 386, 390-392, 405, 420-424.

███████████████████████████████████████████

███████████████████████████. JA pp. 70-85, 144-148.

Furthermore, the District Court also found that A.B.'s principal mailed two (2)

annual notice letters to J.B.   JA pp. 61, 360-366.   ████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████. JA pp.

361 ¶ 9, 362-364.   Specifically, ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████   JA pp. 362-363.

███████████████████████████████████████████████

███████████████████████████████████████. JA pp. 360-361

¶ 10, 362-366.   ████████████████████████████████████

---

[6] IDEA regulations provide that "a copy of the procedural safeguards available to the *parents of a child with a disability* must be given to the parents only one time a school year, except that a copy also must be given to the parents" in several other circumstances, including "[u]pon initial referral or parent request for evaluation…" 34 CFR 300.504(a) (emphasis added).  The same section in IDEA's regulations allow school districts to comply with this procedural requirement by placing a copy of the Handbook on its internet website, which CMS did in this case. *See* 34 CFR 300.504(b) ("[a] public agency may place a current copy of the procedural safeguards notice on its Internet Web site if a Web site exists."); JA pp. 361-366.

████████████████████████████████████████

████████████████████. JA pp. 70-85, 144-148. ████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████. JA pp. 70-85, 144-148.

Ultimately, the District Court weighed this evidence in the administrative record and determined that J.B. *was* provided "proper notification of administrative rights under the IDEA." JA p. 61. Even *Richard R*., the leading case relied on by J.B. and the District Court, recognized that "some other source of IDEA information" provided to a parent was sufficient to break the chain of causation and dispense with the withholding exception. *See Richard R.,* 567 F. Supp. 2d at 945.

Thus, even if there was a requirement to provide a PWN or a Procedural Safeguards Notice to J.B. under IDEA, and even if CMS failed to fully provide those notices, J.B. was still made aware of his due process rights under IDEA by CMS on several occasions beginning in 2013, and then again in 2014 and 2015. JA pp. 60-61, 360-366, 392. J.B. did not exercise his due process rights until 2018. JA p. 43, 84. Therefore, the District Court erred in holding that any withholding by CMS prevented J.B. from timely filing a due process petition. JA p. 55. Accordingly, the District Court errored in holding that the withholding exception to North Carolina's one-year statute of limitations applied in this case.

## CONCLUSION

For the foregoing reasons, CMS prays that this Court REVERSE the judgment of the District Court below holding that the withholdings exception to North Carolina's one-year statute of limitations for IDEA claims applies and enter an Order holding that Defendants' IDEA claims are time-barred by North Carolina's one-year statute of limitations as a matter of law.

In the alternative, if this Court affirms the District Court's holding on the application of IDEA's statute of limitations, the appropriate remedy would be to also affirm the District Court's holding dismissing Appellee's Counterclaim *without prejudice*. This would allow Appellees to pursue exhaustion on the substance of their IDEA claims in the appropriate administrative forum and preserve their right to re-file as an aggrieved party in federal court after fulfilling IDEA's exhaustion requirement, if desired.

Respectfully submitted, this the 5th day of July, 2022.

**CAMPBELL SHATLEY, PLLC**

s/ Kristopher L. Caudle
Kristopher L. Caudle
N.C. State Bar No. 48125
674 Merrimon Ave.
Suite 210
Asheville, NC 28804
(828) 398.2775
(828) 398.2795 *fax*
kris@csedlaw.com

s/ Christopher Z. Campbell
Christopher Z. Campbell
N.C. State Bar No. 23035
674 Merrimon Ave.
Suite 210
Asheville, NC 28804
(828) 398.2775
(828) 398.2795 *fax*
Chris@csedlaw.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   [X] this brief contains 8,655 words

2. This brief complies with the typeface and type style requirements because:

   [X] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word*] in [*14pt Times New Roman*]

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date electronically filed this *Brief of Plaintiff-Appellant* in the above-entitled action upon all parties to this cause via electronic service to all counsel who have consented to the same via the Court's CM/ECF system. Additionally, the undersigned has this date served the Sealed version of the *Brief of Plaintiff-Appellant and Joint Appendix Sealed Volumes II and III*, via USPS, on counsel listed below:

Ms. Stacey Gahagan
The Gahagan Law Firm, PLLC
3326 Durham Chapel Hill Blvd.
Suite 210-C
Durham, NC 27707
SGahagan@ncgplaw.com
Counsel for Defendant-Appellee
This the 5th day of July, 2022.

s/ Kristopher L. Caudle
Kristopher L. Caudle